**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE FIRST SOLAR, INC.  )
DERIVATIVE LITIGATION.  )          Civ. Action No. 12-417-GMS-CJB
                        )
                        )

## REPORT AND RECOMMENDATION

This matter arises out of two separate complaints, wherein two shareholders ("Plaintiffs")

of First Solar, Inc. ("First Solar") alleged that certain current or former directors and officers of

First Solar (collectively, "Defendants") breached their fiduciary duties to First Solar and its

shareholders. (D.I. 4 at 2) Presently pending before the Court is Defendants' Motion to Dismiss

or Transfer for Improper Venue ("Motion"). (D.I. 7) For the reasons that follow, I recommend

that Defendant's Motion be GRANTED and that the case be TRANSFERRED to the District of

Arizona.

## I.    BACKGROUND

### A.    The Parties

The Plaintiffs in this case are Chuluuntsetseg Tsevegmid and Curtis Brownlee,

shareholders of First Solar and citizens of Virginia and Indiana, respectively. (D.I. 1 at ¶ 12; D.I.

10, ex. B (hereinafter, "Brownlee Compl.") at ¶ 5) First Solar, the nominal corporate defendant,

manufactures and sells solar power systems. (D.I. 1 at ¶ 2; Brownlee Compl. at ¶ 29; D.I. 8 at 3)

First Solar is a Delaware corporation having its principal place of business in Tempe, Arizona.

(D.I. 1 at ¶ 13; Brownlee Compl. at ¶ 6; D.I. 8 at 4)

1

Defendants are eleven current or former officers and directors[1] of First Solar.  (D.I. 1 at ¶¶ 14-23; Brownlee Compl. at ¶¶ 7-17; D.I. 8 at 1)  Five of the Defendants are citizens of Arizona, while the remaining Defendants are citizens of Connecticut, Washington D.C., Florida, Minnesota, Texas, and California.  (D.I. 1 at ¶¶ 14-23; Brownlee Compl. at ¶¶ 7-17; D.I. 8 at 6)  It is undisputed that none of the Defendants reside in Delaware.  (D.I. 1 at ¶¶ 14-23; Brownlee Compl. at ¶¶ 7-17; D.I. 8 at 6; D.I. 11 at 5)  Defendants perform or performed their duties primarily at First Solar's headquarters in Arizona.  (D.I. 9 at ¶ 6)

### B.    Procedural Background

On April 3, 2012, Plaintiff Chuluuntsetseg Tsevegmid filed the first derivative suit in this Court against Defendants Michael J. Ahearn, Craig Kennedy, James F. Nolan, William J. Post, J. Thomas Presby, Paul H. Stebbins, Michael Sweeney, José H. Villarreal, Robert J. Gillette, and Bruce Sohn.  (D.I. 1)  On April 10, 2012, Plaintiff Curtis Brownlee filed the second derivative suit in this Court against the same Defendants, but also adding Defendant James Zhu.  (Brownlee Compl.)  On April 30, 2012, the cases were consolidated.  (D.I. 4)

On May 15, 2012, in lieu of filing an answer, Defendants filed the Motion seeking to dismiss the action for improper venue or in the alternative to transfer the action to the District of Arizona.  (D.I. 7)  On June 5, 2012, the case was referred to me by Chief Judge Gregory M. Sleet to conduct all proceedings related to discovery disputes, alternate dispute resolution, and dispositive and nondispositive motions, up to the pretrial conference.  (D.I. 12)  The instant

---

[1]    For the sake of simplicity, and because the Delaware Nonresident Director Consent Statute, Del. Code Ann. tit. 10, § 3114 (West 2009), deals with nonresident officers and directors of a Delaware corporation similarly, the remainder of this Report and Recommendation will refer to Defendants as "directors."  However, such reference should be understood to apply to both the current and former directors and officers of First Solar who are named as Defendants.

Motion was fully briefed on June 18, 2012. (D.I. 8, 11, 13)

The Court originally scheduled oral argument on the Motion in August 2012; at the request of counsel, that proceeding was moved to September 20, 2012. (D.I. 16) At the end of oral argument, the Court ordered the parties to submit supplemental briefing regarding the applicability of a line of cases drawn from the United States Supreme Court's decision in *Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd.*, 308 U.S. 165 (1939), which were not discussed in the parties' initial briefing. (D.I. 18 (hereinafter, "Tr.") at 63:23-64:11) Supplemental briefing was completed on October 4, 2012. (D.I. 19, 20)

### C.    Factual Background

The consolidated complaints assert claims against Defendants for breaches of fiduciary duty to First Solar and for unjust enrichment. (D.I. 1 at ¶¶ 101-112; Brownlee Compl. at ¶¶ 54-70) The essential allegations in both complaints are the same, and are as follows. From June 2008 to June 2009 a manufacturing defect arose in some solar power modules that First Solar had manufactured, which caused the modules to experience premature power loss once installed. (*See, e.g.*, D.I. 1 at ¶ 33) In response, First Solar initiated a voluntary remediation program beyond that called for by the standard limited warranty, pursuant to which First Solar would cover certain costs and remediation efforts. (*Id.*) It is alleged that from July 2008 through November 2011, Defendants made false and misleading statements to the public by misrepresenting and failing to disclose the actual and full impact of the manufacturing defect. (*Id.* at ¶¶ 34-73) These allegedly false and misleading statements made in First Solar's public filings, press releases, and conference calls touted First Solar's "positive financial results, significant growth, and presented positive forward guidance," while allegedly failing to disclose

the actual and full impact of the manufacturing defect on the company's earnings and the actual costs the company was incurring to remediate those defects. (*Id.* at ¶¶ 5-6)

Defendants thus are alleged to have breached their fiduciary duties because they knew and had reason to suspect that First Solar's corporate reporting and disclosure system was not functioning properly and that the above-referenced issued statements were materially false and/or misleading. (*Id.* at ¶ 5) It is alleged that when the truth was finally revealed regarding these false and/or misleading statements, First Solar's market capitalization fell by approximately $512.8 million. (*Id.*) In addition to the loss of market capitalization, Defendants' breaches allegedly caused substantial damages to First Solar, including damage to First Solar's reputation, goodwill, and standing in the business community, as well as the resultant loss of business and business opportunities, legal fees, costs and potentially large amounts that may be payable in settlement or satisfaction of class action lawsuits. (*Id.* at ¶ 6) It is further alleged that certain Defendants utilized their knowledge of First Solar's true health and inflated stock price for their own benefit by selling over $378 million worth of First Solar common stock while in possession of material, adverse non-public information. (*Id.* at ¶ 7)

## II.     DISCUSSION

### A.     Standard of Review

A court may dismiss a case under Fed. R. Civ. P. 12(b)(3) if venue is improper. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448-49 (D. Del. 2007); *see also Rait P'ship, L.P. v. Fieldstone Lester Shear & Denberg, LLP*, No. 09-28-GMS/MPT, 2009 WL 3297310, at *2 (D. Del. Oct. 14, 2009). When reviewing a motion to dismiss for improper venue, the court must generally accept the allegations in the complaint as true, unless those allegations are contradicted by the

4

defendants' affidavits. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir.

2012) (citations omitted); *Kimmel v. Phelan Hallinan & Schmieg, PC*, 847 F. Supp. 2d 753, 759-

60 (E.D. Pa. 2012); *see Rait P'ship, L.P.*, 2009 WL 3297310, at *2. The moving party bears the

burden of proving that venue is improper. *Chase Bank USA N.A. v. Hess Kennedy Chartered

LLC*, 589 F. Supp. 2d 490, 501 (D. Del. 2008); *Traynor*, 495 F. Supp. 2d at 449.

### B.     Venue

Venue may be proper in one of two ways. As a general matter, since the Federal Rules of

Civil Procedure do not contain any specific venue provisions or requirements, a court must look

to the relevant venue statutes in order to determine whether venue is appropriate in a given case.

*Traynor*, 495 F. Supp. 2d at 449; *Albright v. W.L. Gore & Assoc., Inc.*, No. 02-304-GMS, 2002

WL 1765340, at *4 (D. Del. July 31, 2002). However, venue may also be proper if a party has

consented to suit in a particular district, thus having waived any right to challenge venue. *See,

e.g., Neirbo v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939); *Davis v. Smith*, 253

F.2d 286, 288 (3d Cir. 1958); *Standard Oil Co. v. Montecatini Edison S.p.A.*, 342 F. Supp. 125,

132 n.7 (D. Del. 1972). Plaintiffs argue that venue is proper under either of these options;

therefore, the Court will examine both, starting first with whether Defendants consented to suit in

this District (and thus have waived their right to contest venue).

#### 1.     Waiver

Although venue in federal courts is determined by statute, the statutes "merely accord[] to

the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or

may waive, at his election." *Neirbo*, 308 U.S. at 168; *see also Standard Oil Co.*, 342 F. Supp. at

132 n.7. The privilege "may be lost by failure to assert it seasonably, by formal submission in a

5

cause, or by submission through conduct." *Neirbo*, 308 U.S. at 168. In other words, "unless the defendant has also consented to be [sued] in [the district in question], he has a right to invoke the protection which Congress has afforded him." *Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338, 340 (1953).

The threshold issue in this case is whether Defendants' service as directors of First Solar, in light of the content of the Delaware Nonresident Director Consent Statute, Del. Code Ann. tit. 10, § 3114 (West 2009) ("Section 3114" or "Director Consent Statute"), constitutes a waiver of the federal venue privilege. Section 3114 (a) and (b) notes that a "nonresident . . . who . . . accepts election or appointment" as an officer or director of a Delaware corporation "shall . . . be deemed thereby to have consented to the appointment" of the corporation's registered agent (or if there is none, the Secretary of State) for service of process in civil actions brought in the state. Del. Code Ann. tit. 10, § 3114(a) & (b). The Supreme Court case of *Neirbo v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939), and its progeny address what type of act regarding the designation of an agent for service of process can amount to a waiver of the federal venue privilege. Although the parties did not squarely address this line of cases in their initial briefing, in their supplemental briefing both sides note the relevance of the *Neirbo* line of cases and argue why those cases support their respective positions. (D.I. 19, 20)

Defendants argue that they have not expressly waived their venue privilege because these cases require that, to do so, Defendants would have had to take express, affirmative action to appoint such an agent. They assert that no waiver has occurred here "[b]ecause the appointment of an agent under Section 3114 occurs by operation of law and not through any affirmative act evincing actual consent" and because there is no allegation that any of Defendants expressly

6

appointed such an agent.[2] (D.I. 19 at 4)  In contrast, Plaintiffs argue that Defendants have waived

their federal venue privilege because the decision to become a director is an affirmative choice

that is made as part of the bargain by which such directors "are able to enjoy the business

freedoms that exist in Delaware." (D.I. 20 at 4)  The Court is aware of no case law expressly

addressing whether a non-resident director consent statute, such as the one at issue in this case,

effects a waiver of the federal venue privilege for non-residents who serve as directors of

domestic corporations.  However, in *Neirbo* and related cases, courts have considered the waiver

issue in other contexts and set forth some important analytical markers.

In *Neirbo*, the Supreme Court decided that the designation of an agent by a foreign

corporation for service of process, in accordance with state law, effected a waiver of the federal

venue privilege. 308 U.S. at 167.  At the time, New York corporate law required foreign

corporations that wished to do business in New York to designate an in-state agent upon whom a

summons could be served. *Id.* at 174-75.  In accordance with this law, the defendant, a foreign

corporation, designated such an agent. *Id.*  The defendant was later sued in federal court in New

York and moved to dismiss for improper venue, arguing that the relevant federal venue statute

was not satisfied.[3] *Id.* at 167.  In denying the motion, the Supreme Court found that the

defendant corporation had waived the right to contest venue in the district because the "statute

---

[2]    Defendants do not appear to dispute that if they *had* taken an affirmative action to
appoint a registered agent for service of process in Delaware, that this would amount to an
affirmative consent to be sued in both state *and federal court* in Delaware.  In other words, they
do not appear to argue that if such "actual consent" was evidenced, the scope of that consent
would be cabined to the courts of the State (and would not extend to the District of Delaware).

[3]    Under the then-existing federal venue statute, venue was proper in diversity cases
"in the district of the residence of either the plaintiff or the defendant." *Neirbo*, 308 U.S. at 167
(internal quotation marks and citations omitted).

calling for such a designation is constitutional, and the designation of the agent [was] 'a

voluntary act'" evidencing "*actual* consent . . . to be sued in the courts of New York, federal as

well as state." *Id.* at 175 (emphasis added). In so finding, the court distinguished *In re Keasbey

& Mattison Co.*, 160 U.S. 221 (1895), because in that case "the designation under state law

which is the basis of consent had in fact not been made." *Neirbo*, 308 U.S. at 173 n.15.

Conversely, in *Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338 (1953), the Supreme

Court decided that a nonresident's operation of a motor vehicle in Kentucky, in conjunction with

the Kentucky Non-resident Motorist Statute, did not effect a waiver of the non-resident's federal

venue privilege. *Id.* at 339-40. The statute read, in relevant part, that:

> "Any nonresident operator . . . of any motor vehicle who accepts the
> privilege . . . to operate motor vehicles . . . within this state *shall, by such
> acceptance and by the operation of such motor vehicle within this state*,
> make the Secretary of State his agent for the service of process in any civil
> action instituted in the courts of this state [arising out of an accident or
> collision or damage in the state involving the vehicle]."

*Id.* at 343 n.1 (emphasis added). In finding that the nonresident did not waive his federal venue

privilege, the *Olberding* Court dismissed "fictive talk" suggesting that "the reason why a non-

resident can be subjected to a state's jurisdiction is that the non-resident has 'impliedly'

consented to be sued there." *Id.* at 340-41. Instead, the Supreme Court noted that (as contrasted

with the federal venue inquiry) personal jurisdiction over nonresident defendants in such cases

"does not rest on consent at all" and instead is based on the power of the courts, rather than the

person's consent. *Id.* at 341 ("The fact that a non-resident motorist who comes into Kentucky

can, consistent with the Due Process Clause of the Fourteenth Amendment, be subjected to suit

in the appropriate Kentucky state court has nothing whatever to do with his rights under [the

8

federal venue statute]."); *see also McCoy v. Siler*, 205 F.2d 498, 499 (3d Cir. 1953) ("jurisdiction [of a state court over a nonresident defendant] rests on power and not consent at all").

Ultimately, even in light of the content of the Kentucky Non-resident Motorist Statute, the Supreme Court concluded that it would be "surely to move in the world of Alice in Wonderland" to find that waiver of one's federal venue rights in the district could be implied from the mere act of driving in a state, as the motorist "never consented to anything" and never "actually agreed to be sued." *Olberding*, 346 U.S. at 341.

The *Olberding* Court distinguished *Neirbo* on the grounds that, in *Neirbo*, the defendant had "designated an agent" upon whom a summons could be served, which "constituted an '*actual* consent' to be sued in [the federal and state courts of] New York, not the [l]ess so because it was 'part of the bargain by which [the defendant] enjoys the business freedom of the State of New York.'" *Id.* at 341-42 (emphasis added) (quoting *Neirbo*, 308 U.S. at 175). The *Olberding* Court further noted that the *Neirbo* doctrine "would equally apply to an individual defendant in situations where a state may validly require the designation of an agent for service of process as a condition of carrying on activities within its borders, *and such designation has in fact been made*." *Id.* at 342 (emphasis added). However, because "no such designation was *required or made* . . . the *Neirbo* case ha[d] no applicability." *Id.* (emphasis added).

These cases highlight the distinction between (1) a person's doing of a voluntary act that is not directly related to the acceptance of service of process in a state, but that is nevertheless deemed to equate to such acceptance by virtue of the text of a state statute; and (2) a person's voluntary act of "actual consent" to being sued in a state, evidenced by a person's express designation of an agent for service of process. According to the Supreme Court, the former

9

cannot operate to waive the federal venue privilege, while the latter can.

This distinction has been consistently applied by the courts. In such cases, waiver has been found where an agent for service of process was actually appointed by the party in question via written designation. For example, in *Davis v. Smith*, 253 F.2d 286 (3d Cir. 1958), the defendant, a Delawarean, was found to have waived his federal venue privilege to contest suit in Pennsylvania federal court, due to the fact that he had actually appointed an agent to accept service of process for him in Pennsylvania in regard to his work as administrator for a Pennsylvania estate. *Id.* at 288-89. The defendant had made the designation due to a mistaken belief that it was required by Pennsylvania law. *Id.* at 289. The Third Circuit, relying on *Neirbo* and *Olberding*, found that even "though a statute may require the designation of an agent to receive process, *such designation* is still deemed a voluntary act evidencing consent to the suit." *Id.* at 288-89 (emphasis added).[4] On the other hand, waiver has not been found where a party did

---

[4]      The district court in *Davis* had come to a similar conclusion, finding that: "[t]he appointment of an agent for acceptance of service of process by operation of state statue solely, without an affirmative 'act' on the part of the defendant in appointing the agent, may not of and in itself constitute a waiver of venue, i.e., a binding indication of the defendant's willingness to be sued in that state. Where, however, as here, a defendant performs the affirmative 'act' *and in fact actually appoints an agent* to accept service of process, whether voluntarily or under the requirement of a local statute, under the *Neirbo* case such defendant has waived the personal defense of venue and is amenable to suit in the federal court in the state of appointment." *Davis v. Smith*, 126 F. Supp. 497, 500 (E.D. Pa. 1954) (emphasis added). Other courts have held similarly. *See, e.g., Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp.*, 230 F.2d 511, 512-13 (3d Cir. 1956) (finding waiver where the defendant, pursuant to the requirements of a state law, "file[d] an actual designation and consent empowering a statutory agent to accept for it legal process issued within the state" regarding suits of the kind brought against it in federal court in the instant case); *Datascope Corp. v. SMEC, Inc.*, 561 F. Supp. 787, 790-91 (D.N.J. 1983) (finding waiver where the defendant was required to, and did, file a certificate of merger expressly agreeing to substituted service of process); *Herpst v. S.B.I. Liquidating Corp.*, 279 F. Supp. 928, 931 (E.D. Pa. 1968) (same).

not expressly appoint such an agent and service was instead made under a state statute that implied consent from the defendants' mere acts of doing business in the state. *Goldberg v. Wharf Constructers*, 209 F. Supp. 499, 502-503 (N.D. Ala. 1962); *cf. Robinson v. Coos Bay Pulp Corp.*, 147 F.2d 512, 513-14 (3d Cir. 1945) (citing *In re Keasbey*, 160 U.S. at 229) (dismissing plaintiff's argument that the mere act of doing business in a state amounts to waiver of the federal venue privilege).

Turning to the case-at-bar and taking into account the holdings of the above cases, the Court cannot conclude that Defendants have waived their federal venue privilege. Plaintiffs argue that Defendants' voluntary service as directors of First Solar, in conjunction with the content of Section 3114, evidences Defendants' intent to waive their venue privilege. (D.I. 20 at 5) However, implying waiver by operation of law from Defendants' decisions to serve as directors of First Solar—conduct that is distinct from the act of expressly designating an agent for service of process—would be contrary to the decision in *Olberding* and all of the cases interpreting it. These cases explain that (1) even if a person or entity makes a voluntary decision to have some connection to a state's affairs, such as by operating a motor vehicle in the state, or by conducting business in a state (just as Defendants made voluntary decisions to serve as directors of a Delaware corporation here), and (2) even if the state's law notes that in doing such an act, the person shall be deemed to have designated an in-state agent for service of process (just as Section 3114 does here)[5], that (3) this is insufficient to waive the venue privilege in federal

---

[5] On this point, a comparison of the Kentucky Non-resident Motorist Statute at issue in *Olberding* with Delaware's Director Consent Statue, makes clear that the operative language used in both statutes is similar. *Compare Olberding*, 346 U.S. at 343 n.1 ("Any

11

court. Instead, the Supreme Court found that something more was required—a manifestation of

"actual consent," which would only be effectuated when designation of an agent for service of

process had "in fact been made" by the person. *See Olberding*, 346 U.S. at 341-42; *see also*

*Goldberg*, 209 F. Supp. at 502-503 ("implied statutory appointment by doing business . . . is

contrary to *Olberding*"). Here, because there is no assertion in the Complaint (or otherwise) that

Defendants have expressly appointed such an agent, through written designation or by taking any

other similar action, the Court declines to find that Defendants have waived their federal venue

privilege in the manner required by the Supreme Court's case law.[6]

    To avoid this result, Plaintiffs place particular reliance on *Sunbury Wire Rope Mfg. Co. v.*

*U.S. Steel Corp.*, 230 F.2d 511 (3d Cir. 1956), noting that *Sunbury* requires "courts to examine

---

nonresident operator . . . *shall, by such . . . operation of such motor vehicle within this state*, make the Secretary of State his agent for the service of process") (emphasis added), *with* Del. Code Ann. tit. 10, § 3114(a) ("Every nonresident of this State who . . . [serves] as a director . . . of the governing body of a corporation . . . *shall, . . . by such service, be deemed thereby to have consented* to the appointment of the registered agent of such corporation . . . as an agent upon whom service of process may be made") (emphasis added).

    [6]    Further reinforcing this conclusion is the fact that this Court and other courts, simultaneously considering the Director Consent Statute and the issue of venue, have not attempted to apply the content of the Director Consent Statute as the sole basis upon which to find an express waiver of the federal venue privilege. *See Gatz v. Ponsoldt*, 271 F. Supp. 2d 1143, 1161 (D. Neb. 2003) (finding that venue in RICO suit as to defendant directors of Delaware corporations was proper in the District of Delaware, only because the portion of the RICO federal venue statute at issue, 18 U.S.C. § 1965(a), allowed for venue in "any district in which such person . . . has an agent" and because, pursuant to Section 3114, the defendants were deemed to have registered agents in Delaware); *Bernstein v. IDT Corp.*, 582 F. Supp. 1079, 1088 (D. Del. 1984) (finding that venue did not exist in District of Delaware as to RICO claim against director of Delaware corporation, after examining Section 1965(b) of the RICO federal venue statute); *In re Mid-Atl. Toyota Antitrust Litig.*, 525 F. Supp. 1265, 1271-73, 1278-79 (D. Md. 1981) (finding that Section 3114 provided a sufficient basis for personal jurisdiction over defendant director of Delaware corporation in the District of Delaware, but only exploring venue as to that defendant under the *parens patriae* amendment to the antitrust laws).

the actual conduct of the party and 'construe that expression of consent in light of the statutory scheme and requirements that it was designed to satisfy.'" (D.I. 20 at 3-4 (citing *Sunbury*, 230 F.2d at 513)) However, whatever Plaintiffs' arguments to the contrary, *Sunbury* does not alter the Supreme Court's distinction between consent deemed to exist by operation of law and express acts of "actual consent" to appointment of an agent for service of process. *See Sunbury*, 230 F.2d at 513. Specifically, in *Sunbury*, the Third Circuit concluded that the teaching of the Supreme Court's jurisprudence in this area was that if "the state scheme is to require foreign corporations to submit to all suits filed in any competent federal court within the state *and a foreign corporation files an appropriate consent*, such facilitation of suability in the federal courts is legally unobjectionable." *Id.* (emphasis added). Instead, *Sunbury* deals with the extent to which a court should construe the scope of an actual "expression of consent." *Id.* There, the "expression of consent" was the defendant's filing, as required by state law, of a certificate of withdrawal expressly consenting to substituted service in the state. *Id.* at 512-14. The court determined the scope of that consent, particularly whether it extended to civil antitrust actions, by construing the language of that document "in light of the statutory scheme and requirements it was designed to satisfy." *Id.* at 513-14. Here, it is not alleged that Defendants have filed, or otherwise made, an "expression of consent" as contemplated by *Sunbury* and relevant Supreme Court case law. Thus, *Sunbury*'s holding does not alter the result in this case.

Plaintiffs also argue that such a conclusion would be "illogical" because "[d]efense counsel has conceded that venue exists in the Chancery [C]ourt [and that] [p]recedential case law has held that the distinction . . . between federal and state court is a nullity." (D.I. 20 at 5) Yet

13

while Defendants' counsel did appear to concede at oral argument that Defendants would not have challenged venue at the state court level had they been sued in the Delaware Court of Chancery, these statements were not concessions that federal venue exists in this District as to this action. Instead, Defendants' counsel was simply noting that because there are differences in the state and federal venue analyses (with the latter implicating potential venue choices that possibly exist throughout the nation), the question of venue would not arise in the state court context in the same way it arises in federal court. (Tr. at 14:5-14) In fact, Defendants' counsel suggested that had they been sued in the Court of Chancery, Defendants may well have removed the case to this Court[7] and subsequently moved to transfer the case to the District of Arizona under 28 U.S.C. § 1404(a) ("Section 1404(a)"), arguing solely that a more convenient venue exists in another federal district. (Tr. at 31:6-20) Defendants would have faced a heavy burden in arguing for transfer to another district in that scenario pursuant to Section 1404(a) case law, but while such conduct might have been procedurally cumbersome, it would not have been illogical. *See Burlington N. & Santa Fe Ry. Co. v. Herzog Servs., Inc.*, 990 F. Supp. 503, 504 (N.D. Tex. 1998) (applying Section 1404(a) in determining whether a removed case should be transferred).

For the reasons set out above, based on the facts of record, Defendants have not actually

---

[7]     This "voluntary action" of "appl[ying] for . . . removal to [this Court]" would presumably have eliminated any argument that the Defendants might have had that they did not consent to venue in this Court. *See Seaboard Rice Milling Co. v. Chicago, R.I. & P.Ry. Co.*, 270 U.S. 363, 367 (1926); *see also Burlington N. & Santa Fe Ry. Co. v. Herzog Servs., Inc.*, 990 F. Supp. 503, 504 (N.D. Tex. 1998) (finding that Sections 1391 and 1406 do not apply to a removed action because "a defendant who removes an action waives his objection to venue").

14

consented to venue in this Court, and so the Court declines to find that they have waived their federal venue privilege.

### 2.   Venue Under the Relevant Statutes

Having determined that the protections provided by the federal venue statutes have not been waived by Defendants, the Court now examines whether venue is proper under those statutes.

### a.   The Relevant Venue Statutes

Venue is generally determined under 28 U.S.C. § 1391 ("Section 1391"). *See* 28 U.S.C. § 1391(a) ("Except as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States[.]"). In pertinent part, Section 1391 provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

However, in shareholder derivative actions, 28 U.S.C. § 1401 ("Section 1401") is also relevant. *See Indus. Waxes, Inc. v. Int'l Rys. of Cent. Am.*, 193 F. Supp. 783, 786 (S.D.N.Y. 1961). Section 1401 provides that venue is appropriate in a shareholder derivative action "in any judicial district where the corporation might have sued the same defendants."

15

### b. The Proper Role of Section 1401

In their initial briefs, the parties set forth different interpretations regarding the proper role of Section 1401 in the venue analysis.

Defendants argue that in a shareholder derivative action, Section 1401 is properly utilized in connection with Section 1391 in order to determine whether venue is appropriate. (D.I. 13 at 2) In particular, Defendants argue that the purpose of Section 1401 is to realign the nominal corporate defendant as the plaintiff in the venue analysis, before one goes on to analyze whether venue would then be proper under any of the three prongs of Section 1391(b). (*Id.*; Tr. at 6:1-15)

For their part, Plaintiffs seem to present a three-tiered argument to the contrary as to why venue is proper in this Court. First, Plaintiffs argue that Section 1401 provides a "separate means of determining venue" that is not connected to or determined in conjunction with Section 1391. (D.I. 11 at 6) Second, Plaintiffs cite Section 3114 for the proposition that nonresident directors of a Delaware corporation are deemed to have consented to the jurisdiction of Delaware courts in suits alleging breaches of fiduciary duty. (*Id.* at 7-8) And third, Plaintiffs then argue that because there is personal jurisdiction in this District for such a case pursuant to Section 3114, then "Defendants have also consented to venue in this District." (*Id.* at 9) In sum, Plaintiffs argue that a venue inquiry under Section 1401 (operating independently from Section 1391) demonstrates that venue here is proper, because the Director Consent Statute provides a means by which First Solar could sue Defendants in this District. (*Id.* at 9)

For the following reasons, the Court agrees with Defendants' interpretation of the proper role of Section 1401.

16

First, and most importantly, the case law relating to Section 1401 makes it clear that while this statute does expand venue in derivative cases, it does so solely by working in conjunction with Section 1391 in the manner described by Defendants. Indeed, in all of the shareholder derivative actions cited by the parties in their briefs, courts have interpreted the import of Section 1401 in just this manner. In analyzing the impact of Section 1401 on the venue question, these courts have read Section 1401 as requiring that the nominal corporate defendant be considered the plaintiff, and have then gone on to analyze whether, pursuant to Section 1391, that corporation could have asserted venue over the remaining defendants in the district-at-issue. *See, e.g., In re Josephson*, 218 F.2d 174, 183 (1st Cir. 1954); *Smith v. Murchison*, 310 F. Supp. 1079, 1089 (S.D.N.Y. 1970); *Indus. Waxes*, 193 F. Supp. at 786 n.9.[8] In other words, courts have consistently found that "[u]nder § 1401, the beneficiary corporation becomes the plaintiff for venue purposes in a shareholder's derivative action," and then "where the corporation can sue for venue purposes is governed by [Section] 1391." *Van Gelder v. Taylor*, 621 F. Supp. 613, 621 (N.D. Ill. 1985).

Plaintiffs argue to the contrary that Section 1401's original "purpose [wa]s to expand venue in derivative actions." (D.I. 11 at 6; Tr. at 22:15-19) Specifically, Plaintiffs argue that, when enacted, the purpose of then-existing Section 1401 was to allow for venue in diversity-

---

[8]     At oral argument, the Court asked Plaintiffs' counsel to point to a derivative case where a court did not interpret Section 1401 to work in this way. (Tr. at 25:14-18) The only case Plaintiffs cited in response, *Dowd v. Front Range Mines, Inc.*, 242 F. Supp. 591 (D. Colo. 1965), is not such a case. (Tr. at 25:14-26:3, 47:6-9) *Dowd* did in fact apply Section 1391 after using Section 1401 to re-align the nominal corporate defendant in the manner discussed above. *Dowd*, 242 F. Supp. at 595-96.

based derivative lawsuits in the district where the corporation was incorporated. (Tr. at 22:15-23:3) This was because, at the time, the predecessor to Section 1391 allowed for venue where all plaintiffs or all defendants resided.[9] (*Id.*); 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1825 (3d ed. 2012). Plaintiffs argue, without citation, that when Congress amended Section 1391 in 1990—an amendment that eliminated venue in the district of the plaintiff's residence—this amendment could not have had the effect of limiting a party's ability to bring a shareholder derivative suit in federal court in the state where the corporation was incorporated. (Tr. at 22:15-24:11)

The Court finds this argument unpersuasive. First, even after the 1990 amendments to Section 1391, courts have interpreted Section 1401 as simply a means of re-aligning the nominal corporate defendant before applying Section 1391. *See Johnson v. Masselli*, No. 2:07 CV 214 PPS, 2008 WL 111057, at *4 (N.D. Ind. Jan. 4, 2008) ("Under § 1401 . . . venue in this case is proper only where [the corporation] may have properly initiated the suit against the remaining defendants under § 1391."); *see also Rathbone L.L.C. v. XTO Energy, Inc.*, No. CIV-08-1370-HE, 2010 WL 891634, at *1 & n.2 (W.D. Okla. Mar. 9, 2010) (finding that venue would not be

---

[9]     The impact of Section 1401 at that time can be seen by imagining the following scenario: Plaintiff shareholder is a resident of *X* state and sues three defendant directors of a corporation who each are residents of *Y* state, while the nominal corporate defendant corporation is a resident (i.e., is incorporated in) *Z* state. Under the prior version of Section 1391, without resort to Section 1401 to realign the corporate defendant as the plaintiff, the plaintiff would not have venue to bring a federal lawsuit in *Z* state against the directors—because not all plaintiffs or defendants were residents of *Z* state. The impact of Section 1401 in such a case, after re-aligning the nominal corporate defendant as the plaintiff, would be to allow for venue in *Z* state—since now under Section 1391, all plaintiffs (i.e., the only plaintiff—the corporation) would be a resident of *Z* state.

proper under Section 1401, under analysis as to whether nominal corporate defendant could have sued in the district, by examining content of Section 1391(b)(2)). Indeed, one commentator has specifically indicated that the 1990 amendments to Section 1391 have restricted the ability of a shareholder to bring suit in a diversity case in the district of the corporation's residence. Wright et al., *supra*, § 1825 ("[U]ntil 1990, because the corporation could sue the real defendants in a diversity action in any district in which the corporation resided, the shareholder was permitted by Section 1401 to bring suit in those districts as well.").

Second, even after the 1990 amendments to Section 1391, Section 1401 would still have independent force—force that could well be used in certain situations to broaden venue possibilities in a shareholder derivative suit filed in federal court. Take for example, a derivative suit where state $X$ is the state of incorporation of the nominal corporate defendant and is the situs of the events giving rise to the claims, but all defendant directors of the corporation are residents of state $Y$. In such a scenario, Section 1401 will allow for venue in either state $X$ or state $Y$ pursuant to Section 1391(b), whereas if Section 1401 could not be utilized to re-align the nominal corporate defendant as the plaintiff, venue in state $Y$ would not exist (since absent the ability to consider the nominal defendant as the plaintiff, all defendants would not reside in state $Y$). (*See* Tr. at 10:14-11:2) In such a situation, Section 1401 could still be utilized to fulfill its purpose of "enlarg[ing] venue in actions brought by a stockholder on behalf of a corporation." *See Murchison*, 310 F. Supp. at 1089.

Third, even though the impact of Section 1401 has been reduced over time, it is notable that the breadth of Section 1391 has expanded during that period. As previously noted, before

Section 1401 was enacted, the predecessor to Section 1391 allowed for diversity-based derivative

suits to be brought only where all plaintiffs or all defendants resided. Wright et al., *supra*, §

1825. "That venue scheme, in combination with limitations on personal jurisdiction, made it

difficult, if not impossible, to bring a shareholder suit in federal court when all the real and

nominal parties on the same side were not residents of the same state." *Id.* Thus, Section 1401

was enacted to make it easier to bring derivative suits by allowing the realignment of the nominal

defendant. *Id.* However, the current form of Section 1391 provides an expanded volume of

venue choices that were not available previously. *See, e.g.*, 28 U.S.C. § 1391(b)(2) (allowing

venue in "a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred"). The consequence of this is that "the need to resort to Section 1401 for

derivative actions is greatly diminished." Wright et al., *supra*, § 1825.

For these reasons, the Court finds that Section 1401 is not meant to function as an

"independent" venue statute, but instead is used in conjunction with Section 1391 to allow a

plaintiff in such cases to (potentially) expand the number of district courts where federal venue

may be found in shareholder derivative actions.[10]

---

[10]     It is worth noting that, even if Plaintiffs were correct that Section 1401 somehow
operates as an "independent" venue statute, its arguments as to *how* the statute would work to
establish venue here are flawed. Plaintiffs note that Section 3114 has been found to establish
personal jurisdiction in this Court as to suits against nonresident directors. (D.I. 11 at 8-9 (citing
*Eurofins Pharma US Holdings v. Bioalliance Pharma SA*, 623 F.3d 147, 157-58 (3d Cir. 2010);
*Corp. Emp't Res., Inc. v. Boone*, Civ. No. 11-408-SLR, 2011 WL 5335467, at *4 (D. Del. Nov.
4, 2011); *Marnavi SpA v. Keehan*, Civ. No. 08-00389-SLR-LPS, 2010 WL 1499583, at *3 (D.
Del. Apr. 14, 2010))) Plaintiffs then go on to argue that because the statute can be used to
establish personal jurisdiction in this way, its provisions have the same effect as to venue—that
their import is to suggest that Defendants "have also consented to venue in this District." (D.I.
11 at 9) Yet as was discussed earlier, there is a difference between personal jurisdiction, which is

c.      **Whether Venue Exists in the District of Delaware under Sections 1401 and 1391**

Having determined the appropriate role of Section 1401, the Court will now apply Sections 1391(b)(1)-(3) after appropriately realigning First Solar, the nominal corporate defendant, as the plaintiff.

Section 1391(b)(1) provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Here, none of Defendants are residents of Delaware. (D.I. 1 at ¶¶ 14-23; Brownlee Compl. at ¶¶ 7-17; D.I. 8 at 6; Tr. at 5:10-13) Thus, this section cannot serve as a basis for venue.

Section 1391(b)(2) provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). The test

---

based upon a court's power to adjudicate, and venue, which is a personal privilege of the defendant that must be waived explicitly. *Olberding*, 346 U.S. at 341; *see also FS Photo, Inc. v. PictureVision, Inc.*, 48 F. Supp. 2d 442, 444 (D. Del. 1999). Moreover, the cases that Plaintiffs cite in support of their argument that an analysis of personal jurisdiction and venue should be conflated in this way, (D.I. 11 at 9), are inapposite to the facts of the instant case. *See, e.g., Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 459 (D. Del. 2009) (assessing venue in light of the content of the patent venue statute, 28 U.S.C. § 1400(b), which allows for venue in the judicial district where the defendant "resides", and noting that pursuant to Section 1391(c), a corporate defendant "resides" in any district where it is subject to the "court's personal jurisdiction"); *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 481 (D. Del. 1987) (finding that the content of a jurisdiction selection clause in a Note signed by the defendant "is also an implicit consent to venue in this district" because "the purpose of the clause was to provide a forum in the event of litigation").

21

"is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Id.* (citation omitted). Here, there is no dispute that a substantial portion of the events or omissions giving rise to the claims at issue did not occur in Delaware. (D.I. 11 at 13-14; Tr. at 21:23-22:1)

Section 1391(b)(3) states that "if there is no district in which an action may otherwise be brought as provided by [Section 1391(b)(1) or (2)]" then the civil action may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." This section is a fall-back provision that applies only "if there is no other district which would have both personal jurisdiction and venue as to all defendants." *FS Photo, Inc. v. PictureVision, Inc.*, 48 F. Supp. 2d 442, 448 (D. Del. 1999). Thus, the Court must determine whether there is another district where the requirements of Sections 1391(b)(1) or (2) are met. *Cf. Bockman*, 459 F. App'x at 160 n.8 (finding that the predecessor to Section 1391(b)(3) could not have applied in a derivative action because the action could have been brought pursuant to Section 1391(b)(2), in the district where the company had its principal offices and held its board meetings).

Here, Section 1391(b)(3) does not apply because the case could have been brought in the United States District Court for the District of Arizona, pursuant to Section 1391(b)(2). Specifically, at least a substantial part of the events or omissions giving rise to the claims at issue occurred in Arizona. Plaintiffs allege that the claims arose out of the actions and inactions of Defendants in their roles as directors of First Solar. (D.I. 1 at ¶ 5) It is undisputed that Defendants perform (or performed) those roles primarily in Arizona. (*Id.* at ¶¶ 13-23; Brownlee

22

Compl. at ¶¶ 7-17; D.I. 9 at ¶ 6) Moreover, a majority of the relevant disclosures occurred in

Arizona and none occurred in Delaware. For instance, Plaintiffs allege that Defendants caused

First Solar "to issue improper statements in its public filings, press releases and conference

calls." (*See, e.g.*, D.I. 1 at ¶ 5) In the complaints, Plaintiffs point to numerous such press

releases and conference calls as being false and misleading. (*See, e.g., id.* at ¶¶ 34-73) It is not

seriously disputed that "[a]ll of the press releases" and "[s]ubstantially all of the earnings calls"

cited in the complaints originated in Arizona. (D.I. 9 at ¶¶ 13-14; *see also* D.I. 11 at 13

(Plaintiffs noting that claims did not arise "*solely* in Arizona" because certain of the SEC filings

at issue were actually filed in the District of Columbia) (emphasis added)) Because many of

these relevant actions originated in Arizona, this court finds that the civil action could have been

brought there under Section 1391(b)(2) and, thus, that Section 1391(b)(3) does not apply. *See*

*Bockman*, 459 F. App'x at 160 n.8.[11]

   For these reasons, I find that venue in this District is improper under Sections 1401 and

1391.

   **C.   Dismiss or Transfer**

   If a case is filed in the wrong court, a court has discretion to "dismiss, or if it be in the

interest of justice, transfer [the] case to any district or division in which it could have been

brought." 28 U.S.C. § 1406(a) ("Section 1406"); *see also Van Dusen v. Barrack*, 376 U.S. 612,

---

[11]    The Court also assumes that personal jurisdiction is proper for all Defendants in
the District of Arizona because the parties do not appear to dispute that the action could have
been brought there, (Tr. at 5:14-22, 21:22-23; D.I. 9 at ¶¶ 6-8, 10-14), and because there are
related actions pending in that District against the Defendants. (*See, e.g.*, D.I. 14, ex. B & ex. C)

634 (1964). A district where the case "could have been brought," similar to Section 1391(b)(3),

requires that the transferee forum have proper venue and personal jurisdiction over the defendant.

*FS Photo, Inc.*, 48 F. Supp. 2d at 449. The moving party bears the burden to establish the

appropriateness of transfer under Section 1406. *Marnavi SpA v. Keehan*, Civ. No. 08-00389-

SLR-LPS, 2010 WL 1499583, at *2 (D. Del. Apr. 14, 2010). Having already determined that the

case could have been brought in the District of Arizona, the Court next looks at whether it would

be in the interests of justice to transfer the case there.

The functional purpose of Section 1406 "is to eliminate impediments to the timely

disposition of cases and controversies on their merits." *Minnette v. Time Warner*, 997 F.2d 1023,

1027 (2d Cir. 1993). To that end, courts consider, for instance, whether a transfer would speed

the disposition of a case on the merits. *See Scott Paper Co. v. Nice-Pak Prods., Inc.*, 678 F.

Supp. 1086, 1090 & n.4 (D. Del. 1988) (transferring the case "[r]ather than harshly penalizing the

plaintiff by dismissing the case" in part because the defendant asserted that transfer would aid in

resolving the dispute as "conveniently and expeditiously as possible"); *cf. Halim v. Eagle Grp.*

*Int'l, LLC*, Civil Action 08-4312, 2008 WL 5377618, at *7 (E.D. Pa. Dec. 23, 2008) (finding

personal jurisdiction lacking but transferring the case "to obviate the unnecessary step of

requiring plaintiff to refile her claim in another court"). Courts also look to the location of the

parties and where the relevant events occurred in determining whether to transfer. *See Keyter v.*

*Bush*, Civ. No. 08-097-SLR, 2008 WL 3833428, at *2 (D. Del. Aug. 15, 2008). However, where

the plaintiff brought the action in the wrong district for some improper purpose, such as bad

faith, to harass the defendant with litigation in a distant forum or because of "blatant forum

24

shopping," a transfer may not be in the interests of justice. *FS Photo, Inc.*, 48 F. Supp. 2d at 450.

The Court recommends transfer to the District of Arizona for a few reasons. First, at oral argument, neither party had an objection to transfer if venue was not found in this District, and Plaintiffs seemed to prefer that option to dismissal without prejudice. (Tr. at 19:16-25, 30:13-23); *see Scott Paper Co.*, 678 F. Supp. at 1090 & n.4 (transferring the case "[r]ather than harshly penalizing the plaintiff by dismissing the case" in part because the defendant asserted that transfer would aid in resolving the dispute as "conveniently and expeditiously as possible"). Second, a number of the relevant parties have connections to the District of Arizona. *See Keyter*, 2008 WL 3833428, at *2 (transferring the case to another district in part because plaintiff resided there). Specifically, First Solar is headquartered in Arizona, all Defendants perform or performed many of their duties primarily in Arizona, and some Defendants are residents of Arizona. (D.I. 9 at ¶¶ 2, 6-7; D.I. 1 at ¶¶ 14, 16, 17, 23) Third, as stated above, at least a substantial part of the events giving rise to the claims at issue occurred in the District of Arizona. *See Keyter*, 2008 WL 3833428, at *2 (citing the fact that "the events at issue seem[ed] to have occurred" in the transferee district in support of transfer). Fourth, transferring the case will help timely dispose of this case in that it "obviate[s] the unnecessary step of requiring [Plaintiffs] to refile [their] claim[s] in another court." *See Halim*, 2008 WL 5377618, at *7. Finally, there have been no allegations that this case was brought for some improper purpose. *See FS Photo, Inc.*, 48 F. Supp. 2d at 450. Thus, I find that transfer to the District of Arizona is in the interests of justice.

25

## III.   CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT Defendants' Motion to Dismiss or Transfer (D.I. 7) and TRANSFER this action to the District of Arizona.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: March 4, 2012

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE